SPENCER KELLER, Arizona SBN 038491
Email: spencer@legalforcelaw.com

RAJ V. ABHYANKER, California SBN 233,284
Email: raj@legalforcelaw.com

**LEGALFORCE RAPC WORLDWIDE, P.C.**
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone:  (650) 965-8731
Facsimile:   (650) 989-2131

Attorneys for Plaintiffs and the Proposed Class,

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GovernmentGPT, Inc., Raj Abhyanker, Individually and on Behalf of All Other Taxpayers Similarly Situated; and, Municipality and Police Departments Does 1-500,<br><br>Plaintiffs,<br><br>v.<br><br>Axon Enterprise, Inc., formerly d/b/a Taser International, Inc., Microsoft Corporation, and Does 1-50,<br><br>Defendants. | Case No. CV-24-01869-PHX-SMB<br>Judge:  Hon. Judge Susan M Brnovich<br><br>**GOVGPT'S REPLY TO AXON'S OPPOSITION TO EMERGENCY MOTION FOR IMMEDIATE ORDER TO PROHIBIT USE OF AXON BODY 4 CAMERAS AT POLITICAL EVENTS** |

**Introduction**

1. Plaintiffs GovernmentGPT, Inc. ("GovGPT") and Raj Abhyanker ("Abhyanker") et. al. hereby reply to the opposition to the Emergency Motion presented by Axon Enterprise, Inc. ("Axon") to their Emergency Motion for Immediate Order to Prohibit Use of Axon Body 4 Cameras ("Axon Body 4") at Political Events. Axon's opposition is fraught with misrepresentations, deflections, and an attempt to shift the focus away from legitimate national security concerns raised by Plaintiffs. This rebuttal will systematically address and debunk Axon's arguments, demonstrating the necessity and urgency of granting the Emergency Motion with at least a requirement that Axon notify each and every one of their 17,000 law enforcement customer they have within the United States of the risks posed by their Axon Body 4 cameras, and let those departments come to their own conclusions.

**Axon's Misrepresentation of Facts**

2. Axon attempts to dismiss Plaintiffs' concerns as baseless by labeling them as "fear and falsehoods" and "speculation." It provides declarations from non-experts - internal staff, and a consultant hired by Quectel.[1] Contrary to Axon's assertions, Plaintiffs' concerns are rooted in well-documented issues of cybersecurity vulnerabilities associated with components manufactured by entities like Quectel. Axon's assertion that Plaintiffs rely on "inadmissible hearsay, speculation, and conspiracy theories" is a mischaracterization of the Complaint, which included links to credible cybersecurity articles and Congressional warnings. This Reply aims to further support through exhibits and a declaration, as provided along with in the Declaration of Raj Abhyanker.

---

[1] The plaintiffs' efforts to secure neutral professional experts, as evidenced by Exhibits 15 and 16, demonstrate a clear commitment to obtaining objective and credible analysis of the security risks posed by the Quectel LTE communication chip Model EG065K-NA in Axon Body 4 cameras. These efforts underscore the seriousness of the plaintiffs' concerns and their dedication to presenting authoritative evidence to support their national security-based emergency motion. *Decl. of Abhyanker*, ¶¶28-29, Ex. 15-16.

2
GOVGPT'S REPLY TO AXON'S OPPOSITION TO EMERGENCY MOTION TO
PROHIBIT USE OF AXON BODY 4 AT POLITICAL EVENTS
CASE NO.: CV-24-01869-PHX-SMB

See: *Decl. of Abhyanker*, ¶¶1-38, Ex. 1-25.  As an opening matter, Ex.17 provides undeniable photographic evidence taken on August 8, 2024, showing the Quectel LTE communication chip Model EG065K-NA inside a disassembled Axon Body 4 camera. These photographs clearly illustrate the presence of the Quectel chip, substantiating the plaintiffs' claims about the components used in Axon Body 4 cameras.  *Id* at  ¶30, Ex. 17. Ex.18 supports Ex.17 by providing a physical Axon Body 4 device in disassembled form, showing the Quectel LTE communication chip Model EG065K-NA.  *Id* at  ¶31, Ex. 18.  Contrary to the Opposition, Quectel LTE communication chip Model EG065K-NA inside every Axon Body 4 can conduct over the air updates.  *Id* at  ¶18-20, Ex. 5-7.  Moreover, this itself is a red herring:  its firmware is provided at least in part directly from Quectel in China even when the update is via USB connection. *Id*. This device is proposed to be delivered to the Court as evidence, further reinforcing the physical proof of the Quectel chip's presence, and the specific model of the chip used.

**Misleading Statements on Component Security**

   3. Axon asserts that the chipset and base communication modules in the Axon Body 4 module are designed, developed, and manufactured by Qualcomm, not Quectel. However, this argument fails to address the critical point: even if Qualcomm manufactures a substantial portion of the communication circuitry, the integration of Quectel components introduces potential security vulnerabilities.  The Opposition goes out of its way to claim that Axon Body 4 merely allows to "<u>view</u> a livestream of their BWCs while in the field" as if this is a limiting factor on the risk.  Not true.  One way communication is plenty: Axon Body 4 provides real time streaming via the Internet to a remote location, providing all that is needed for malicious actors to get data and intelligence they need. Moreover. the security of the overall system is only as strong as its weakest link. Axon's dismissal of potential threats is not only reckless but also ignores the complex nature of supply chain security.

4. Despite Axon's wild conspiracy theories, Plaintiffs discovered the presence of Quectel LTE communication chip Model EG065K-NA in Axon Body 4 cameras on or about May 11, 2024. *Id* at ¶9, Ex. 1.  Forensically preserved evidence will show that to be the case.  *Id* at ¶10, Ex. 2.

**Congress and FCC Highlight National Security Risks of Quectel in Axon Body 4**

5. U.S. Congressman Rep. Mike Gallagher (R-WI), Chairman of the House Select Committee on the Chinese Communist Party and Rep. Raja Krishnamoorthi (D-IL), Ranking Member of the House Select Committee on the Chinese Communist Party, have raised concerns regarding the security of Quectel components in critical infrastructure. *Id* at  ¶18-20, Ex. 5-7.  Specifically, they have said publicly in writing as of a year ago that the Chinese Communist Party "has given extensive state support to its cellular IoT industry, led by Quectel". *Id* at  ¶18a, Ex. 5.  They have publicly stated the Chinese Communist Party "requires companies to comply with the Party's commands" that "raises particularly grave concerns in the context of critical infrastructure and any type of sensitive data" transmitted through Quectel chips. *Id* at  ¶18b, Ex. 5.  Moreover, the Congressmen have made clear that Axon had choices - there are still many U.S. and allied firms that compete with PRC cellular IoT module providers—such that restricting Quectel's access to the U.S. market would not undermine U.S. telecommunications networks. *Id* at ¶18c, Ex. 5.

6. Moreover, Honorable Jessica Rosenworcel, Chairwoman of the Federal Communications Commission ("FCC") took note and followed up less than a year ago concurring with Gallagher (R-WI) and Krishnamoorthi (D-IL) and  when she "asked U.S. government agencies to consider declaring that Chinese companies including Quectel" "pose unacceptable national security risk, according to letters seen by Reuters." *Id* at  ¶19, Ex. 6.  The involvement of the FCC indicates that the matter is not merely a private dispute but a significant issue requiring federal oversight. This reinforces the

argument that the risks associated with Axon's Body 4 cameras warrant immediate judicial intervention. *Id.*

7. If that is not enough, just earlier this year Gallagher (R-WI) and Krishnamoorthi (D-IL) sent and made public another letter to the Honorable Lloyd Austin, Secretary of the U.S. Department of Defense at The Pentagon and to Honorable Janet Yellen, Secretary, U.S. Department of the Treasury. *Id* at ¶20, Ex. 7. In this letter, the Congressmen describe: "Quectel, based in the People's Republic of China (PRC)" "is currently gaining market share in the U.S." and "its status as a contributor to the PRC military—the People's Liberation Army (PLA)—is highly relevant." *Id* at ¶20a, Ex. 7. Quectel has close relationships with "Ministry of Industry and Information Technology (MIIT) was formed in 2008 and is key to the PRC's military-civil fusion strategy." *Id* at ¶20b, Ex. 7. "There is also significant evidence suggesting Quectel may contribute to the defense industrial base, even apart from its MIIT ties" including that "Quectel is a key supplier for numerous firms that the Department of Defense has already listed as Chinese military companies" *Id* at ¶20c, Ex. 7.

8. By addressing the letter to the Secretary of Defense and the Secretary of the Treasury, the Congressmen ensure that the relevant authorities who are responsible for national security and economic oversight are directly informed. This is crucial for coordinated action and policy-making to mitigate the risks identified. *Id* at ¶¶18-20, Ex. 5-7. Secretary Lloyd Austin's role involves safeguarding national defense, making his awareness and response to potential espionage and cybersecurity threats critical. Secretary Janet Yellen, responsible for the Treasury, oversees economic security, which includes addressing vulnerabilities in the supply chain that could affect national security. *Id*. When elected representatives express alarm, it underscores the national significance and urgency of addressing these vulnerabilities. *Id* The engagement of Congressmen in this issue reflects ongoing legislative oversight aimed at safeguarding national security.

*Id* This oversight lends weight to Plaintiffs' concerns and contradicts Axon's attempt to dismiss them as speculative. *Id*

**Firmware Update Control by Quectel in Axon Body 4 Cameras**

9. Ex.13, the Axon Body 4 Camera User Guide, explicitly describes how firmware updates, including firmware code updates provided by Quectel in Shanghai, China, are programmed into Axon Body 4 cameras using USB (page 42). *Id* at ¶26a, Ex. 13. This is critical evidence demonstrating that Quectel, a Chinese manufacturer, has control over the firmware updates of the cameras used in the United States. *Id*



10. The visualization on page 38 of the user guide shows the Axon Body 4 during the firmware update process. *Id* at ¶26b, Ex. 13. This provides a visual confirmation that Quectel's firmware updates are an integral part of the camera's routine operations, highlighting the potential for unauthorized access and security breaches.



See Page 38 of Axon Body 4 manual, in **Ex.13**. *Id* at ¶26b, Ex. 13.

11. Page 42 of the manual also details how firmware, including updates from Quectel, is downloaded through the Internet network to the Axon Body 4. *Id.* This process underscores the vulnerabilities inherent in using internet-based updates, which can be intercepted or manipulated by malicious actors.

12. The manual's documentation of this process supports Plaintiffs' concerns that the firmware updates from Quectel, which are at least partially managed and controlled from Shanghai, present a significant security risk due to potential unauthorized access during the download and installation process. *Id.*

**Firmware download**

| Action | Definition |
|---|---|
| Firmware Download Timeframe | Adjusts the timeframe in which cameras download a firmware update. A shorter timeframe means cameras download firmware sooner but may result in congestion on your network. |

See Page 42 of Axon Body 4 manual, in **Ex.13**. *Id.*

13. Ex.14 is a true and correct copy of a Reddit thread from 2020 discussing the security vulnerabilities of Quectel's firmware updates. *Id* at ¶27, Ex. 14. The thread includes detailed discussions by community members and experts, highlighting that Quectel's firmware is not open-sourced and that its codebase is only fully known to Quectel in China. *Id.* The lack of transparency in Quectel's firmware updates, as noted in the thread, implies significant risks because neither the public nor independent cybersecurity experts can verify the security of the code. This corroborates Plaintiffs' significant risks about potential backdoors and unauthorized data access.

14. The thread also implies that regardless of the transmission mode (USB or over-the-air), the firmware code changes are only fully known to Quectel in China. *Id.* This poses a substantial risk, as any updates could include malicious code without the knowledge of users or security agencies in the United States. *Id.*

15. The security vulnerabilities discussed in the Reddit thread provide an independent source of evidence supporting Plaintiffs' claims. The community's recognition of these risks adds weight to the argument that Quectel's control over firmware updates presents a credible and significant threat to the security of Axon Body 4 cameras.

16. Moreover, exhibits attached to the Declaration of Raj Abhyanker provide copies of the "confidential" Quectel LTE communication chip Model EG Series specifications relevant to Axon Body 4 hosted on foreign websites, including those in Russia and Iran. *Id* at ¶¶21-24, Ex. 8-11. They reveal that the chips firmware upgrades, whether the code provided by Quectel in China is installed on Axon Body 4's over the air or through USB

can be exploited for unauthorized access and data extraction and live streaming manipulation, interception, and espionage. *Id.* Despite Axon's claims, the firmware updates for the Quectel chips are at least partially written and controlled by Quectel in Shanghai, China. *Id.* This external control poses a direct threat as it opens avenues for unauthorized access and manipulation. *Id.*

**Plaintiffs' Standing and Merit**

17. Axon argues that Plaintiffs lack standing and cannot establish a likelihood of success on the merits. GovGPT has faced significant market entry barriers and reduced revenue opportunities due to Axon's monopolistic practices and concealment of material facts. These barriers have prevented GovGPT from competing fairly, leading to financial harm. Moreover, Axon's failure to disclose the use of Quectel chips constitutes deceptive practices that have misled consumers and purchasers, including taxpayers. The plaintiffs have a legal right to pursue claims based on these deceptive practices to ensure transparency and accountability.

18. The plaintiffs have invoked various federal and state laws designed to protect consumers and promote fair competition, including the Sherman Act, Clayton Act, RICO, and state consumer fraud acts. These laws provide private parties the right to seek redress for economic and competitive harms they have suffered, even if indirectly. The plaintiffs, including GovernmentGPT, Inc. ("GovGPT"), Raj Abhyanker, and similarly situated taxpayers and municipalities, have experienced direct and personal injuries due to Axon's concealment and deception through higher taxes. Moreover, Plaintiffs have demonstrated standing through the numerous causes of action affecting privacy rights and concealment of material facts between competitors, along with those related to antitrust. Therefore there is a clear and imminent threat posed by the use of Axon Body 4 cameras, particularly in politically sensitive environments, and Plaintiffs have standing to bring these claims. There is established judicial precedent for private parties to have

standing in cases involving antitrust violations, consumer fraud, and deceptive practices. The plaintiffs' claims are grounded in well-recognized legal principles that allow private entities to seek redress for harms suffered. The plaintiffs' legal action complements and supports government efforts to address national security risks. By highlighting specific instances of harm and seeking judicial intervention, the plaintiffs help to reinforce and expedite regulatory and enforcement actions.

**Likelihood of Success on the Merits**

19. Plaintiffs have provided substantial evidence indicating the risks associated with Quectel components. According to the policy paper by Charles Parton, the distinction between economic security and national security is increasingly blurred, particularly with the rise of IoT technologies. *Id* at ¶¶32, Ex. 19. A significant threat highlighted by the article in Ex.20 is the ability of CIMs to receive firmware updates remotely and discretely. *Id* at ¶¶33, Ex. 20. This threat is not speculative; recent concerns about Chinese cyber-attacks targeting U.S. critical infrastructure underscore the CCP's capabilities and intentions. *Id* at ¶¶33-37, Ex. 21-24. The presence of Chinese CIMs in critical systems offers a direct entry point for such attacks. Axon's attempt to undermine this evidence by labeling it as "false assessment with more untruths" fails to acknowledge the independent and credible sources validating these concerns. *Id.*

**Irreparable Harm**

20. The urgency of the motion is underscored by the need to prevent potential surveillance and data breaches at upcoming political events, which could have severe repercussions on national security and public safety.

21. Axon contends that Plaintiffs' delay in filing the motion undermines their claim of irreparable harm. However, this Complaint was timely brought within weeks of the assassination attempt against Donald Trump, and just about two months after the issues were discovered and researched, and it became clear that Axon would not act voluntarily

on its own. *Id* at ¶38, Ex. 25. Ex.3 and Ex.4 provide the redacted resumes of Patrick M. Gibbons and Fred Addy, respectively, who are on the GovGPT consulting and advisory teams with extensive backgrounds in national security and defense. *Id* at ¶¶11-12, Ex. 3-4. Patrick Gibbons, a former FBI Special Agent with over 25 years of experience in the Criminal & Counter Terrorism division, including roles as a Legal Attaché in two Asian countries, lends significant credibility to the national security concerns raised by GovGPT. *Id* at ¶¶11-17, Ex. 3-4. Fred Addy, a former U.S. Special Forces Green Beret and JTAC with active Top Secret-SCI Clearance and a degree in Astrophysics from Princeton University, further supports these concerns. *Id*. His strategic advisory role and leadership in the Stanford veterans club underscore his expertise in security matters. *Id*

22. Both experts, prior to the virtual meeting with Axon management on May 30, 2024, identified the national security risks associated with the Quectel LTE communication chip Model EG065K-NA in Axon Body 4 cameras. *Id* Their recognition of these risks is based on their extensive backgrounds and public reports by Congress, emphasizing the seriousness of the issue. *Id*

23. The advice from Gibbons and Addy to pursue no partnership or investment from Axon unless they disclosed the presence of the Quectel chips to law enforcement customers reflects a responsible and proactive approach to mitigating these security risks. *Id* The decision by Raj Abhyanker and GovGPT to explore Axon's interest prior to discussing the Quectel issue was strategic, ensuring that the conversation about national security risks did not preemptively close the door on potential partnerships. *Id* However, the commitment to raise the issue regardless of Axon's interest demonstrates a strong ethical stance on transparency and public safety. *Id* The commitment to refuse any investment or partnership with Axon unless they proactively notified their police customers about the Quectel chips highlights GovGPT's dedication to ethical business

practices and national security. *Id*  This stance was advised and supported by both Gibbons and Addy, reinforcing the seriousness of the security risks. *Id*

**Balance of Equities & Public Interest**

24. The balance of equities favors Plaintiffs. While Axon argues that prohibiting the use of Axon Body 4 cameras would harm law enforcement agencies, the greater harm lies in the potential exploitation of these devices for unauthorized surveillance. In effect, Axon is admitting they are a monopoly, and have no competitors through their lock in pricing.  Police departments should have other choices, and without, could use the older Axon cameras.   The public interest in safeguarding democratic processes and preventing potential espionage outweighs Axon's commercial interests.  The public interest is best served by granting the Emergency Motion. Ensuring the security and integrity of political events is paramount, particularly in the current geopolitical climate where foreign interference and cybersecurity threats are significant concerns. The deployment of potentially compromised surveillance equipment at such events poses an unacceptable risk.

**Request for Show Cause Order**

25. Axon's request for a show cause order to award its fees and costs is an attempt to intimidate and silence Plaintiffs. The emergency motion is neither frivolous nor baseless but is grounded in legitimate security concerns that warrant thorough judicial consideration.

**Conclusion**

26.  For the foregoing reasons, Plaintiffs request that the Court grant the Emergency Motion for Immediate Order to Prohibit Use of Axon Body 4 Cameras at Political Events by requiring Axon to issue a formal notice to all its law enforcement customers within 10 days of its ruling on this Emergency Motion. This notice should include the following specific warnings:

a. **Security Risks**: "Axon Body 4 cameras contain Quectel chips, which have been identified by U.S. Congress as potential security threats due to their susceptibility to espionage by the Chinese Communist Party (CCP). These chips can facilitate real-time surveillance, GPS tracking, and data interception."

b. **National Security Concerns**: "The use of Axon Body 4 cameras at sensitive locations, including political events, presents a significant risk to national security. The potential for unauthorized access and surveillance by foreign adversaries endangers the safety of law enforcement personnel and the public."

c. **Immediate Actions**: "Law enforcement agencies are advised to suspend the use of Axon Body 4 cameras at all political events and seek alternative surveillance solutions. Enhanced security measures should be implemented to protect against unauthorized surveillance."

27. The Court should appoint a Special Master to oversee compliance with its Order. Axon Enterprise, Inc. should be required to submit a compliance report to the Special Master within 30 days, detailing the steps taken to adhere to the Court's Order. The urgency and gravity of the potential security threats necessitate immediate judicial intervention to protect national security and public interest.

Respectfully submitted this Thursday August 8, 2024.

LEGALFORCE RAPC WORLDWIDE P.C.

/s/ Raj Abhyanker
Raj Abhyanker
Plaintiff, and Attorney for Plaintiff GovGPT and the Proposed Class (*pro hac vice*)